**COM**
**MICHAEL M. LIN, ESQ.**
Nevada Bar No. 10392
**LIN LAW GROUP**
5288 Spring Mtn. Rd, Ste 103
Las Vegas, Nevada 89146
(702) 871 9888
linlawgroup@gmail.com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CJCLive, LLC.,<br><br>　　　　Plaintiff,<br>vs.<br><br>REGINAL BRAZIEL., an individual residing in Clark County, NV; DOES I through X and ROE CORPORATIONS I through X, inclusive,<br><br>　　　　Defendants. | CASE NO.<br><br>DEPT NO.<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES, AND INJUNCTIVE RELIEF AND SEIZURE**<br><br>**JURY DEMAND** |

COMES NOW, Plaintiff CJCLive, LLC., ("CJC")  by and through its attorney of record, Michael M. Lin, Esq., of LIN LAW GROUP, and hereby complains and alleges as follows:

1. This is an action seeking monetary damages against Defendants for breach of contract, misappropriation of trade secrets pursuant to NRS § 600A.035 and 18 USC § 1832, and other various claims.

2. Plaintiff also seeks declaratory and injunctive relief to enforce the rights of the Plaintiff. Plaintiff seeks to enjoin Defendant from engaging in any activity that involves the misappropriation of Plaintiff's trade secrets. Plaintiff also seeks seizure and return of stolen and misappropriated trades secrets. Plaintiff also seeks a protective order during these judicial proceedings.

3. That at all times herein mentioned, Plaintiff CJCLive, is a domestic limited

liability company doing business in Clark County, Nevada.

4. That at all times herein mentioned, Reginal Braziel ("BRAZIEL") is an individual residing in the State of California.

5. The true names of Does I through X and Roe Corporations I through X, their citizenship and capacities, whether individual, corporate, associate, partnership or otherwise are unknown to Plaintiff who therefore sues these defendants by such fictitious names, Plaintiff is informed and believes, and therefore alleges, that each of the defendants, designated as Does I through X and Roe Corporations I through X, are or may be, legally responsible for the events referred to in this action, and caused damages to the Plaintiff, as herein alleged, and Plaintiff will ask leave of this Court to amend the Complaint to insert the true names and capacities of such defendants, when the same have been ascertained, and to join them in this action, together with the proper charges and allegations.

## JURISDICTION

6. Plaintiff realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates said allegations as though they were set forth fully herein.

7. That the foregoing causes of action are related to acts and events that occurred primarily in Clark County, Nevada.

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332, because this matter involves a question arising under federal law and involves citizens of different states and an amount in controversy in excess of $75,000.00, and pursuant to 28 U.S.C. § 1367 because the state law claim arises from a common nucleus of operative facts and form part of the same case or controversy.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims and causes of action

LIN LAW GROUP
5288 Spring Mtn Rd., Ste 103
Las Vegas, NV 89146
(702) 871-9888 FAX: (702) 648-0888

occurred in this judicial district.

## GENERAL ALLEGATIONS

10. Plaintiff realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates said allegations as though they were set forth fully herein.

11. CJC is a business that (1) sells set top boxes users assemble and operate for the purposes of entertainment channel viewing, (2) sells applications software for the purposes of entertainment channel viewing without the need for a set top box, and (3) provides an online marketplace allowing users to load video and sell products on its website. Its services and products are used in interstate commerce, and to serve customers residing in multiple states.

12. BRAZIEL was hired by CJC on or around August 6th, 2018 for the position of Chief Executive Officer. BRAZIEL was in charge of the technological aspect of the business and was otherwise held to duties typical of a Chief Executive Officer, such as a duty not to disclose.

13. If a client had an issue with using a set top box, a work order would be issued and BRAZIEL was responsible for making sure it was resolved. BRAZIEL from time to time would contact programmers from different countries to troubleshoot issues.

14. Mailchimp is one of the informational databases CJC uses to store its confidential business information, including client contact information, vendors, and the like. BRAZIEL had access to confidential information as a main account holder for CJC with Mailchimp.

15. BRAZIEL was also the custodian of the exchange, transfer and valuation of Truau tokens, a cryptocurrency CJC owns and exchanges. Transactions involving the Truau tokens take place through the web address coinpayments.net and by a process called API, or applications programming interface. A command is entered on the website concerning the Truau tokens (ex: sell, trade, buy), and the command is executed and performed. For example, CJC may log onto coinpayments.net, and allocate 3 Truau tokens to one of its founders. This command would be

entered by API, and the transaction would successfully log the transfer of 3 Truau tokens to the specified founder, client, investor, or customer.

16. As Chief Executive Officer, BRAZIEL also had main account access to Truau e-wallets, the equivalent wallet version for cryptocurrency. Individuals holding Truau cryptocurrency may have an e-wallet. BRAZIEL's main account access to e-wallets permitted BRAZIEL to withdraw and exchange Truau tokens freely from any account or e-wallet.

17. As Chief Executive Officer, BRAZIEL had main account access to vouchers, which were given to customers to enable them to access media channels through an applications software program CJC maintained, accessible by smart phones, tablets, and the like. For example, if a sales team member made a sale, BRAZIEL would approve the amount and types of vouchers to the new customer, enabling them to access the entertainment media channels through their smartphone.

18. Etherscan.io is a website that is the comparable cryptocurrency version of the stock market news exchange. Truau fluctuation in values are tracked on this website.

19. On or around August 10, 2019, CJCLive owners discovered Truau dropped in price. The value before this date was $9.66 per token and rising.

20. BRAZIEL, with his main account access, used API and coinpayments.net to reset the value of the Truau tokens, reducing the tokens' value to $0.00.   Plaintiff and over three hundred founders and investors suffered the loss of the value of their Truau tokens. CJCLive owners lost the value of $9.66 per token, for 180 million tokens. BRAZIEL presumably allocated all the Truau tokens into his own separate e-wallet account.

21. On or around August 12th, 2019, BRAZIL, without authorization, used a separate server address to e-mail individuals, whose contact information he wrongfully misappropriated by accessing MailChimp, and convinced these individuals to attend an unauthorized corporate

LIN LAW GROUP
5288 Spring Mtn Rd., Ste 103
Las Vegas, NV 89146
(702) 871-9888 FAX: (702) 648-0888

webinar.

22. On or around August 12th, 2019, BRAZIEL announced his resignation, including by electronic message, shortly after an unauthorized webinar he hosted under CJC's name.

23. Upon information and belief, during this webinar, BRAZIEL made disparaging remarks about the owners of CJCLive and CJCLive as a business entity. He made statements and opinions concerning the company's assets, confidential information and trade secrets. CJCLive owners were unaware of the webinar until afterwards. BRAZIL also made disparaging remarks about CJC and its owners on the social media platform Facebook. BRAZIEL also attempted to solicit investors to move their investments to a new company.

24. On or around August 15th, 2019, it was discovered that CJCLive's secure database was hacked by an individual with the address reggie@highriseelite.com. CJC owners eventually discovered that BRAZIEL accessed Mailchimp, downloaded all of CJC's confidential information, and stored it into a separate server that only BRAZIEL had sole access to.

25. This permitted BRAZIEL to discretely send out mass e-mails and messages in CJC's name, without the owners' knowledge or authorization. BRAZIEL is one of only a few individuals who had main account access to CJC's secure informational databases. Around this period, BRAZIEL also locked corporate teams out of accounts by changing the passwords.

26. BRAZIEL also made contact or attempted to contact investors, vendors, clients, customers, members, founders, and almost everyone in the database he stole information on. One purpose of these contacts was to invite them to charge-back monies to CJCLive. On August 19th, 2019, CJC received $13,000.00 in charge back requests that were unanticipated. Another purpose of these contacts was to invite these individuals into conducting business relations with BRAZIEL.

27. In various communications, BRAZIEL made statements portraying himself as the

customers' savior and whistleblower, painting himself as the 'good guy'. BRAZIEL made these types of statements along with his recommendation that customers keep in touch with him.

28. Due to BRAZIEL's actions, CJC has suffered general, special, compensatory, punitive damages, in monetary in excess of $75,000.00, and nonmonetary form.

29. Due to BRAZIEL's actions, CJC has had to retain the services of legal counsel to prosecute this matter and should be entitled to reasonable attorney's fees.

## FIRST CAUSE OF ACTION

## (BREACH OF CONTRACT)

30. Plaintiff realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates said allegations as though they were set forth fully herein.

31. On or about August 6th, 2018, Plaintiff and Defendant entered into AGREEMENT, a valid and existing employment contract.

32. Plaintiff performed pursuant to the contract by compensating Defendant with a salary wage.

33. Pursuant to express terms in the AGREEMENT, Defendant promised to carry out the responsibilities and duties of a Chief Executive Officer.

34. Defendant breached the AGREEMENT by failing to perform as Chief Executive Officer and by misappropriating trades secrets and confidential information.

35. Defendant's breach is the direct and proximate cause of Plaintiff's damages.

36. Plaintiff has sustained general, special, and compensatory damages in excess of $75,000.00.

37. Plaintiff has found it necessary to secure the services of an attorney in order to prosecute this action and therefore is entitled to reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION

**(MISAPPROPRIATION OF TRADE SECRETS NRS § 600A.035)**

38.     Plaintiff realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates said allegations as though they were set forth fully herein.

39.     Defendant stole and misappropriated valuable trade secrets, including information concerning Truau tokens, the procedures concerning commission compensation, facts related to costs for internally operating set-top boxes, and information concerning the company's investor base.

40.     Defendant misappropriated valuable trade secrets through unauthorized disclosure of the valuable information by webinar, electronic messaging, social media, and other online platforms and unauthorized use of the confidential information.

41.     As the Chief Executive Officer, Defendant was under an express or implied duty not to disclose, and his disclosure and unauthorized use constitutes a breach of this duty, and was therefore, a misappropriation of trade secrets.

42.     As a result of Defendant's misappropriation, Plaintiff sustained general, special, and compensatory and exemplary damages, loss profits, and good will, in excess of $75,000.00.

43.     Plaintiff has found it necessary to secure the services of an attorney in order to prosecute this action and therefore is entitled to reasonable attorney's fees and costs.

**THIRD CAUSE OF ACTION**

**(THEFT OF TRADE SECRETS 18 U.S.C. § 1832)**

44.     Plaintiff realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates said allegations as though they were set forth fully herein.

45.     Defendant knowingly, and without authorization, misappropriated Plaintiff's trade secrets, including the source of Plaintiff's investor base and confidential information about Plaintiff's Truau tokens, and without authorization altered or destroyed such trade secrets, by

disclosing confidential information to persons not authorized, and by resetting the value of Plaintiff's Truau tokens.

46. Defendant misappropriated the trade secret for the economic benefit of someone other than the owner, Plaintiff, and for the economic benefit of Defendant and his co-conspirators, when Defendant disparaged Plaintiff's reputation and made statements attempting to lure Plaintiff's customer base to follow Defendant.

47. Defendant knew that the offense would injure Plaintiff and knew that the information was a trade secret when Defendant disclosed and altered the trade secrets using account access only he had and using it for purposes not authorized.

48. The misappropriated trade secret was related to or included in a product or service in interstate commerce because Plaintiff services and provides products to customers in multiple states and Truau token transactions take place in multiple states.

49. As a result of Defendant's misappropriation, Plaintiff sustained general, special, and compensatory and exemplary damages, loss profits, and good will, in excess of $75,000.00.

50. Plaintiff has found it necessary to secure the services of an attorney in order to prosecute this action and therefore is entitled to reasonable attorney's fees and costs.

## FOURTH CAUSE OF ACTION

### (INJUNCTIVE RELIEF)

51. Plaintiff realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates said allegations as though they were set forth fully herein.

52. Plaintiff has substantial evidence in the form of physical and electronic documents supporting the assertion that Defendant misappropriated Plaintiff's trade secrets, and therefore is likely to succeed on the merits.

53. Plaintiff will suffer irreparable injury if the injunction is denied, because

Defendant's continued misappropriation will cause Plaintiff to continue losing investors and customers and disrupt Plaintiff's business operations.

54. Plaintiff's injury will outweigh Defendant's injury because Defendant did not have any rights or authority to disclose Plaintiff's trade secrets and therefore enjoining Defendant will not cause Defendant any harm.

55. The injunction is limited to enjoining Defendant from further misappropriation of Plaintiff's trades secrets, which is personal to Plaintiff's business, and has no effect on the public interest, so therefore, the injunction would not be adverse to the public interest.

56. As a result of Defendant's acts, Plaintiff sustained general, special, and compensatory and exemplary damages, loss profits, and good will, in excess of $75,000.00.

57. Plaintiff has found it necessary to secure the services of an attorney in order to prosecute this action and therefore is entitled to reasonable attorney's fees and costs.

## FIFTH CAUSE OF ACTION

## (REPLEVIN OR CLAIM AND DELIVERY)

58. Plaintiff realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates said allegations as though they were set forth fully herein.

59. That Defendant is in wrongful possession of Plaintiff's trade secrets, including files from its informational databases, and has converted the same by transferring these files to his own personal server.

60. That an immediate and irreparable injury will occur if seizure of trade secrets Defendant is in possession of is not made. That the harm to Plaintiff of denying the application outweighs the harm to the legitimate interests of Defendant, against whom seizure is requested, and also substantially outweighs the harm to any third parties who may be harmed by such seizure.

61. That Plaintiff is likely to succeed in showing that the information is a trade secret, that Defendant misappropriated the same and has actual possession.

62. As a result of Defendant's acts, Plaintiff sustained general, special, and compensatory and exemplary damages, loss profits, and good will, in excess of $75,000.00.

63. Plaintiff has found it necessary to secure the services of an attorney in order to prosecute this action and therefore is entitled to reasonable attorney's fees and costs.

## SIXTH CAUSE OF ACTION

### (PROTECTIVE ORDER)

64. Plaintiff realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates said allegations as though they were set forth fully herein.

65. That a protective order be issued to protect the details of Plaintiff's trade secrets and to maintain confidentiality during these proceedings.

66. As a result of Defendant's acts, Plaintiff sustained general, special, and compensatory and exemplary damages, lost profits, and good will, in excess of $75,000.00.

67. Plaintiff has found it necessary to secure the services of an attorney in order to prosecute this action and therefore is entitled to reasonable attorney's fees and costs.

## EIGHTH CAUSE OF ACTION

### (CIVIL CONSPIRACY)

68. Plaintiff realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates said allegations as though they were set forth fully herein.

69. Defendant and one or more persons, by some concerted action, intended to accomplish an unlawful objective for the purpose of harming Plaintiff and others. Defendant conspired with other unknown during the sequence of these events, with the intention to disrupt Plaintiff's business operations.

LIN LAW GROUP
5288 Spring Mtn Rd., Ste 103
Las Vegas, NV 89146
(702) 871-9888 FAX: (702) 648-0888

70. Plaintiff and others suffered damages as a result of their actions.

71. As a result of Defendant's acts, Plaintiff sustained general, special, and compensatory and exemplary damages, loss profits, and good will, in excess of $75,000.00.

72. Plaintiff has found it necessary to secure the services of an attorney in order to prosecute this action and therefore is entitled to reasonable attorney's fees and costs.

## NINTH CAUSE OF ACTION

### (INTENTIONAL MISREPRESENTATION)

73. Plaintiff realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates said allegations as though they were set forth fully herein.

74. Defendant made a false representation with knowledge or belief that it is false, or without sufficient foundation. Defendant made disparaging remarks about CJCLive and its confidential business operations with knowledge that they were false, nor did he have sufficient foundation to support his false representations.

75. Defendant had the intent to induce Plaintiff's and others' reliance on his representation through these disparaging remarks. Defendant intended his audience to take his remarks as truth, and therefore, move their business and investments away from CJCLive.

76. As a result of Defendant's acts, Plaintiff sustained general, special, and compensatory and exemplary damages, loss profits, and good will, in excess of $75,000.00.

77. Plaintiff has found it necessary to secure the services of an attorney in order to prosecute this action and therefore is entitled to reasonable attorney's fees and costs.

## TENTH CAUSE OF ACTION

### (CONVERSION)

78. Plaintiff realleges each and every allegation contained in the preceding paragraphs

of this Complaint and incorporates said allegations as though they were set forth fully herein.

80. Plaintiff is the rightful owner or had right to possession of the property at issue, the Truau tokens and confidential informational databases.

81. Defendant, by a wrongful act or disposition of property, converted Plaintiff's property rights and right to possession, by copying and storing confidential files at a different location and manipulating the value of the Truau tokens.

82. As a result of Defendant's acts, Plaintiff sustained general, special, and compensatory and exemplary damages, loss profits, and good will, in excess of $75,000.00.

83. Plaintiff has found it necessary to secure the services of an attorney in order to prosecute this action and therefore is entitled to reasonable attorney's fees and costs.

## ELEVENTH CAUSE OF ACTION

### (CIVIL RICO)

84. Plaintiff realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates said allegations as though they were set forth fully herein.

85. Defendant engaged in racketeering activities as defined in NRS 207.390 and a racketeering enterprise as is defined in NRS 207.380.

86. Defendants acting directly, and in conspiracy with others or through their syndicate, participated directly in racketeering activity by engaging in at least two crimes related to racketeering.

87. Defendant's activities have the same or similar pattern, intent, results, accomplices, victims or methods of commission, or otherwise interrelated by distinguishing characteristics and are not isolated events.

88. Defendant acquired or maintained directly or indirectly an interest in, or control

of, any enterprise, or Defendant is employed by or associated with any enterprise to conduct or participate directly or indirectly in the affairs of the enterprise through a racketeering activity.

89. Plaintiff's injuries flow from the Defendant's violation of a predicate Nevada RICO act.

90. Plaintiff's injury was proximately caused by the Defendant's violation of the predicate act.

91. Plaintiff did not participate in the commission of the predicate act.

92. Plaintiff is entitled to institute a civil action for recovery of treble damages proximately caused by the RICO violations.

93. As a result of Defendant's acts, Plaintiff sustained general, special, and compensatory and exemplary damages, loss profits, and good will, in excess of $75,000.00.

94. Plaintiff has found it necessary to secure the services of an attorney in order to prosecute this action and therefore is entitled to reasonable attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For an award actual damages in favor of the Plaintiff and against the Defendant in a sum in excess of $75,000.00;
2. For special damages as requested herein;
3. For exemplary damages pursuant to NRS 600A.050 (2);
4. For declaratory relief, injunctive relief, and replevin and protective order;
5. For costs of suit herein;
6. For pre-judgment and post judgement interest at the statutory rate;
7. For reasonable attorneys' fees; and
8. For such other and further relief as the Court may deem just and proper.

DATED: September 11th, 2019.

           LIN LAW GROUP

           ***/s/ Michael M. Lin, Esq.***
           MICHAEL M. LIN, ESQ.
           Nevada Bar No. 10392
           5288 Spring Mtn Rd, Ste 103
           Las Vegas, Nevada 89146
           linlawgroup@gmail.com
           Attorney for Plaintiff

**LIN LAW GROUP**
5288 Spring Mtn Rd., Ste 103
Las Vegas, NV 89146
(702) 871-9888 FAX: (702) 648-0888