UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CJCLIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> REGINAL BRAZIEL, *et al.*, <br><br> Defendant. | Case No. 2:19-cv-1593-KJD-BNJ <br><br> **ORDER** |

    Before the Court is Plaintiff CJCLive, Inc.'s Motion for Reconsideration (#28) and its Motion for an Order to Show Cause (#27). Defendant responded to the Motion for Reconsideration (#30) and to the Motion for an Order to Show Cause (#31). Though the time to do so has passed, Plaintiff has not replied.

**I.**    **Background**

    Plaintiff, CJCLive, Inc., sells subscriptions to media channels for viewers using "set-top boxes." P.'s Mot. for Reconsideration 3, ECF No. 28. In exchange for valid currency, users purchase crypto-coins called TruAu tokens. D's Res. to Mot. for an Order to Show Cause 5, ECF No. 31. Users then use the fictitious TruAu tokens to "pay" for CJC's streaming services. Id. On or about August 6, 2018, Defendant, Reginal Braziel, was hired as CJC's Chief Executive Officer. P.'s Mot. for Reconsideration 3, ECF No. 28. Over the next year, Braziel began to believe that CJC's president, John W. Rustin, was fraudulently operating the company by accepting investments in exchange for TruAu tokens. Id. Braziel contacted several of CJC's clients and investors, using the company's client lists, to allegedly warn them of Rustin's fraud.

    CJC sued Braziel on September 11, 2019. It claimed that Braziel misappropriated CJC's trade secrets, its confidential business information, and several other company assets, including TruAu crypto-coins. See Compl., ECF No. 1. Shortly thereafter, CJC moved for preliminary

injunction to bar Braziel from further misappropriation of CJC property. Mot. for Prelim. Inj., ECF No. 5. It also moved in replevin for return of the allegedly misappropriated assets. Mot. for Return of Prop., ECF No. 7. In response, Braziel moved to dismiss and opposed CJC's motions. See ECF Nos. 16, 17, 20. This Court held an evidentiary hearing on November 7, 2019, where it denied CJC's motion for preliminary injunction and denied Braziel's motion to dismiss. Minutes, ECF No. 23.

At that hearing, CJC repeated the allegations of its complaint, namely that when Braziel left the company, he took the company's client information and contacted several clients to make false allegations about Rustin. Trans. of Proceedings 6, ECF No. 26. CJC also argued that Braziel had started a new company called Cohesive Society (COHSO) and was using CJC's client information to grow that business. P.'s Mot. for Reconsideration 4, ECF No. 28. Braziel countered that CJC actively defrauded its investors by accepting large investments in exchange for TruAu tokens, which have no monetary value.[1] Trans. of Proceedings 21;26, ECF. No. 26. After discovering the fraud, Braziel testified that he resigned and used the client list to warn investors of Rustin's behavior. Id. at 15. Braziel also testified that he had not used the client list for his own personal benefit or to expand his business. Id. at 24.

During the hearing, Braziel called witnesses Maria Lilibeth Digal, and Hany Daoud. Digal testified that she and her husband were investors in CJC. Id. at 29. Together, they had invested close to $100,000 in CJC when Rustin informed them that he was abandoning the business. Id. at 33. Digal was shocked. To that point, she testified, CJC had not compensated her for several hours of work, nor had CJC returned any of her investment. Digal further testified that that she had not used the information that Braziel obtained for her own benefit. Id. at 36. Daoud similarly testified that he had invested about $75,000 in CJC before Rustin shut the company down. Id. at 40. He also testified that he had not been compensated by CJC. Id. at 39. The Court considered Digal and Daoud's testimony, found them credible, and denied CJC's motion for preliminary injunction. CJC now asks the Court to reconsider that decision. Id. at 50.

---

[1] Braziel compared TruAu crypto-coins to "Chuck E. Cheese" tokens because, like Chuck E. Cheese tokens, they have no inherent value and may only be used in CJC's closed universe. Trans. of Proceedings 15, ECF 26.

## II. Legal Standard

A party may seek reconsideration under Fed. R. Civ P. 59(e) or 60(b). However, reconsideration is warranted only if "extraordinary circumstances" exist. Maraziti v. Thorp, 52 F.3d 252, 254 (9th Cir. 1995). A motion for reconsideration should not merely present arguments previously raised; that is, a motion for reconsideration is not a vehicle for the unsuccessful party to revive arguments already rejected. See id. at 255. Reconsideration under Rule 59(e) is appropriate where: (1) the district court is presented with newly discovered evidence or has committed clear error; (2) the initial decision was manifestly unjust; or (3) there is an intervening change in controlling law. See Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Motions made under Rule 59(e) "should not be granted absent highly unusual circumstances." 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). Indeed, reconsideration carries a high bar.

An order to show cause allows the requesting party to bring the opposing party to court to answer its demands. Morehouse v. Pac. Hardware & Steel Co., 177 F. 337, 339 (9th Cir. 1910). *See also,* Thompson v. State ex rel. Bd. of Trustees of Oklahoma Pub. Employees Ret. Sys., 2011 OK 89, ¶ 7, 264 P.3d 1251, 1254. While it does not shift the burden of proof, an order to show cause requires the answering party answer the demands of the other in the presence of the Court. Id.

## III. Analysis

### A. Motion for Reconsideration

CJC argues that new evidence requires the Court to revisit its denial of CJC's preliminary injunction. CJC does not allege that the initial decision was unjust, or that there has been an intervening change in controlling law. Instead, it argues that new evidence suggests that Braziel, Digal, and Daoud submitted untruthful testimony to the Court while under oath. CJC points to Braziel's testimony that he had only used CJC's client information to warn investors of Rustin's allegedly fraudulent actions and to Digal and Daoud's testimony that they had not been compensated by CJC as untruthful.

1      The truth, CJC argues, is that Braziel's newly created business, COHSO, has competing
2  interests with CJC, and that Braziel failed to disclose its existence and role during the hearing.
3  Both Digal and Daoud similarly perjured themselves, CJC argues, because they are managing
4  members of COHSO and did not disclose that fact to the Court. CJC's argument rests on the
5  mere fact that Braziel, Digal, and Daoud are all part of COHSO. CJC argues it is more likely
6  than not that Braziel is using CJC's information to benefit COHSO merely because Braziel has
7  access to the allegedly misappropriated information. CJC further alleges that Digal and Daoud
8  lied about their compensation because CJC paid them through TruAu deposits, airfare, and hotel
9  stays in Las Vegas at CJC's expense. However, Braziel clarified that the airfare and hotel
10 expenses were incentives given to all investors and did not cover the hourly work that Digal and
11 Daoud performed outside of their investments. D's Res. to Mot. for an Order to Show Cause 5,
12 ECF No. 31.

13     Though CJC classifies its evidence of perjury as new information, it has merely re-hashed
14 its old arguments from the hearing. CJC does not provide any new evidence that Braziel is using
15 CJC's information to benefit COHSO. Similarly, CJC fails to provide convincing evidence to
16 show that Digal and Daoud had received financial compensation in exchange for their
17 investments. To the contrary, CJC's "new" evidence is mere speculation that Braziel has
18 improperly used CJC's client lists. Such speculation does not rise to the level necessary to issue
19 an injunction nor does it warrant reconsideration.

20         Further, CJC had the opportunity to impeach each of Braziel's witnesses at the
21 November evidentiary hearing. During cross-examination, CJC could have elicited testimony to
22 aid the Court's credibility determination. However, CJC chose not to cross-examine any of the
23 witnesses, opting instead to let their testimony stand. CJC cannot now present information that it
24 did not even try to acquire while these witnesses were on the stand. As a result, the Court sees no
25 reason to revisit its credibility determination now. Therefore, CJC's Motion for Reconsideration
26 is denied.

**B. Motion for an Order to Show Cause**

CJC has also moved for an Order to Show Cause, asking the Court to order Braziel to show how he, Digal, and Daoud did not submit false testimony to the Court during the November evidentiary hearing. As the Court has found, it need not re-examine Braziel, Digal, and Daoud's testimony here. Because CJC has failed to provide reliable evidence that these witnesses provided false testimony, CJC's Motion for an Order to Show Cause is also denied.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Reconsideration (#28) is **DENIED;**

IT IS FURTHER ORDERED that Defendant's Motion to Show Cause (#27) is **DENIED**.

DATED this 24th day of July 2020.

_____
Kent J. Dawson
United States District Judge